UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

JOHN DOE, individually and on behalf of
all others similarly situated,

Plaintiff,

v. CASE NO. 26-cv-80051-EA

SUNBURN HOLDINGS, LLC d/b/a
SUNBURN CANNABIS,

Defendant.
_________________________________/

**DEFENDANT SUNBURN HOLDINGS, LLC'S
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT AND
INCORPORATED MEMORANDUM OF LAW**

Defendant Sunburn Holdings, LLC ("Sunburn") moves to dismiss the Class Action Complaint pursuant to Rules 12(b)(1) and 12(b)(6). In support, Sunburn states:

## I. INTRODUCTION

Plaintiff John Doe filed this class action lawsuit based on an alleged visit he made to a website to purchase medical marijuana. During that visit, Plaintiff claims that the website recorded his interactions and shared that information with a third-party (Google Analytics). A privacy policy disclosed on the website, however, informed Plaintiff that the website in fact collected information about visitor activity and that said information may be shared with third parties. Notwithstanding this plain and unambiguous disclosure, Plaintiff initiated this putative class action against Sunburn based on privacy rights and statutes Plaintiff maintains Sunburn violated. Each and every one of the claims Plaintiff pursues here fails as a matter of law.

Initially, Plaintiff lacks Article III standing to bring any claims against Sunburn. Sunburn merely holds intellectual property relevant to the Sunburn brand. It does not hold a license to sell cannabis in the State of Florida or otherwise run a cannabis dispensary. For that reason, Sunburn is an improper defendant in this action.

Even if Sunburn were the proper defendant, Plaintiff's claims fail. First, Plaintiff's claims under the Federal Wiretapping Act, also known as the Electronic Communications Privacy Act ("ECPA"), and Florida's Security of Communications Act ("FSCA") fail because Plaintiff lacks Article III standing: he has not sustained a concrete injury from any alleged misconduct. The ECPA and FSCA claims further fail because Plaintiff consented to the very activity of which he complains and because Plaintiff cannot allege that the website operator intercepted an "electronic communication." And, even if Plaintiff had not consented to the website's privacy policies, Plaintiff's ECPA claim fails under the statute's party-exception because the website operator was a party to the communication.

Plaintiff's other causes of action fail for myriad reasons. The civil theft claim fails because Plaintiff does not allege that he completed the statutory prerequisite of serving Sunburn with a written demand prior to filing suit, and Plaintiff does not allege that any "theft" occurred as he voluntarily provided his information to the website who shared it with Google Analytics consistent with the disclosed privacy policies. Plaintiff's claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") fails because Plaintiff again lacks standing to seek injunctive relief, as he fails to allege or demonstrate the likelihood of future harm and he does not allege any actual damages. Plaintiff's claim for intrusion upon seclusion fails because Plaintiff does not allege that any named defendant intruded on Plaintiff in a place where he had a reasonable expectation of

privacy. And finally, the Complaint must be dismissed as an improper shotgun pleading. For each of these reasons, Sunburn respectfully requests that the action be dismissed.

## II. FACTUAL BACKGROUND[1]

### A. Sunburn, the Website, and the Website's Privacy Policies.

Plaintiff alleges that Sunburn operates in Florida as a licensed medical marijuana center and operates a website, *www.sunburncannabis.com* (the "Website"), where customers can purchase medicinal marijuana. [Compl. ¶¶ 27, 31]. Plaintiff is incorrect. More specifically, Sunburn and Green Sentry LLC are owned by High End Holdings. [Paxhia Decl. ¶ 2, **Ex. A**].[2] It is Green Sentry that holds a license to sell marijuana in the state of Florida, it is Green Sentry who operates the cannabis business from which Plaintiff purchased marijuana in this action, and it is Green Sentry that does business as Sunburn Cannabis [*Id.* ¶ 3]. Sunburn, the named Defendant, is merely a holding company for Green Sentry's intellectual property, is not authorized to grow or sell medical marijuana in the State of Florida, and does not sell anything to end customers. [*Id.* ¶¶ 4–5].

Regardless, and according to Plaintiff, Google Analytics is incorporated into the Website. [Compl. ¶ 64]. Google Analytics allegedly places a JavaScript measurement code, which "intercepts a user's interaction" with the Website, "including what page users visit and what users

[1] Unless otherwise stated (*see* Footnote 2), the facts set forth in this section are taken from the allegations in the Complaint and documents incorporated by reference into the Complaint, which the Court must accept as true for the purposes of evaluating the Motion under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). The majority of the statements in the Complaint, however, consist of inappropriate conclusions of law and need not be accepted. *Id.* ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

[2] Although Plaintiff alleges that Sunburn is authorized to sell marijuana in the state of Florida which the Court must accept as true for purposes Sunburn's arguments under Rule 12(b)(6), the Court may consider Ms. Paxhia's Declaration in granting Sunburn's Motion to Dismiss under Rule 12(b)(1).

click on." [*Id.*]. The code also allegedly collects "IP addresses and device information related to the specific computing device a consumer (or patient) is using to access a website." [*Id.*]. Google Analytics apparently stores the data on a Google Analytics database, [*Id.*], and Plaintiff claims that this data allows "Google to discern identities of specific individuals." [*Id.* ¶ 92]. Google allegedly uses this data "to generate reports to help analyze the data from the webpages" and provide marketing and analytics services. [*Id.* ¶ 66]. According to Plaintiff, "[b]oth Google and Defendant profit by using the intercepted data for targeted advertising purposes." [*Id.* ¶ 87].

Plaintiff alleges that the Website operator does not represent that it uses Google Analytics in its privacy policy. [*Id.* ¶ 81]. This allegation, however, is belied by the privacy policy posted on the Website, which Plaintiff incorporates into the Complaint. [*Id.* ¶ 81, n. 30]. The first page a visitor saw when visiting the Website during the relevant time period contained a privacy policy (the "Privacy Policy") that stated that by using the Website, the visitor understood and agreed "to the terms of the Privacy Policy," and agreed that the Privacy Policy represented a "legally binding contract." [Privacy Policy, p. 1, **Ex. B**].[3] The Privacy Policy further stated that Green Sentry collects anonymous demographic information, and "uses your Personal Information to operate, develop, improve and advertise through or with its Website." [*Id.* p.2]. The Privacy Policy further states that Green Sentry "may share data with business partners or affiliates to help us perform statistical analysis, send you email or postal mail, provide customer support, or arrange for deliveries." [*Id.* p.2]. In capitalized letters, the policy warns:

[3] The Privacy Policy available on the Website on May 19, 2025 can be found at: https://web.archive.org/web/20250519013704/https://www.sunburncannabis.com/privacy-policy/. The policy remained unchanged through June 13, 2025: https://web.archive.org/web/20250613000436/https://www.sunburncannabis.com/privacy-policy/.

> DO NOT UPLOAD OR SUBMIT ANY INFORMATION TO, INTO, OR THROUGH THE WEBSITE THAT YOU DO NOT WANT TO BE SHARED OR USED IN THE MANNER DESCRIBED HEREIN.

[*Id.* p.2]. The Privacy Policy goes on to state that Green Sentry collects information, including:

> web request, Internet Protocol address, browser type, browser language, referring/exit pages and URLs, platform type, number of clicks, domain names, landing pages, referring web site addresses, pages viewed and the order of those pages, the amount of time spent on particular pages, the date and time of your request, and one or more cookies that may uniquely identify your browser.

[*Id.* p. 3]. The Website even provides an email address to any visitors who have questions regarding the Privacy Policy and an option to opt out of mailing, marketing, or solicitation lists. [*Id.* p. 3].

Therefore, by using the Website, Plaintiff knowingly consented to the Website's collection of his information, as described in the Privacy Policy, and sharing his information with third-party service providers, as described in the Privacy Policy.

**B. Plaintiff Visits the Website and Sues.**

Plaintiff John Doe alleges that on June 1, 2025, he visited the Website and purchased medicinal marijuana. [*Id.* ¶ 11]. Plaintiff alleges that on the checkout page, he "entered his full name, phone number, email address, home address, and billing address." [*Id.*]. Plaintiff claims that Google Analytics intercepted this information. [*Id.*].

Based on this visit, Plaintiff initiated a class action lawsuit against Sunburn and asserts claims for: (1) violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1) *et seq*.; (2) violation of Florida's Security of Communications Act, Fla. Stat. § 934.01; (3) Civil Theft, Fla. Stat. § 772.11; (4) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204; and (5) intrusion upon seclusion. Notably, Plaintiff brings no cause of action against the party that allegedly intercepted communications—Google.

## III. STANDARD OF REVIEW

### A. Rule 12(b)(1)

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'case' and 'controversies.'" *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982) (citation omitted). "Perhaps the most important of the Article III doctrines grounded in the case-or-controversy requirement is that of **standing**." *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1273 (11th Cir. 2001) (emphasis added).

To establish standing—and entitlement to adjudication of a dispute in federal court—"[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). "To establish injury in fact," the "'[f]irst and foremost' of standing's three elements," "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (citations omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist" and must be "'real,' and not 'abstract.'" *Id.* Article III standing requires a concrete and particularized injury even in the context of a statutory violation. *Salcedo v. Hanna*, 936 F.3d 1162, 1167 (11th Cir. 2019). "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. When a plaintiff is seeking declaratory and injunctive relief, the plaintiff must allege "a substantial likelihood that he

will suffer injury in the future." *A&M Gerber Chiropractic LLC v. GEICO General Ins. Co.*, 925 F.3d 1205 (11th Cir. 2019); *see also Barron v. Synder's-Lance, Inc.*, No. 13-62496-CIV-LENARD/GOODMAN, 2015 WL 11182066, at *10 (S.D. Fla. Mar. 20, 2015) (citation omitted).

**B. Rule 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. A complaint must state sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible only where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While factual allegations are accepted as true, the court is not required to accept mere conclusory allegations or conclusions of law. *Iqbal*, 556 U.S. at 678; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006). When ruling on a motion to dismiss under Rule 12(b)(6), courts may consider documents incorporated by reference into a pleading if the document is: "(1) central to the plaintiff's claim" and (2) the document's authenticity is not disputed. *Day*, 400 F.3d at 1276.

## IV. ARGUMENT

**A. Plaintiff Lacks Article III Standing to Sue Sunburn.**

As a threshold matter, Plaintiff lacks Article III standing to bring this action against Sunburn because he cannot point to any injury in fact "that is fairly traceable to the challenged conduct of **the defendant**." *Spokeo*, 578 U.S. at 338 (emphasis added). As set forth in Ms. Paxhia's declaration, Sunburn is merely a holding company for Green Sentry's intellectual property. [Paxhia Decl. ¶ 4]. It is Green Sentry that holds a license to sell marijuana in the state of Florida, and it is Green Sentry that operates the Website in dispute—a fact confirmed by the Website's Privacy Policy. [*Id.* ¶ 3]. Put simply, Sunburn did not commit any of the purported wrongdoing alleged in the Complaint and there is no injury traceable to Sunburn. Plaintiff's

Complaint must be dismissed on this basis pursuant to Rule 12(b)(1). *DZB ANK AG Deutsche Zentral-Genossenschaftsbank v. Lisa Francisque Ins. Agency. LLC*, No. 10-20731-CIV-GRAHAM, 2010 WL 11597969, at *2(S.D. Fla. July 28, 2010) ("[A] claim should be dismissed when it is brought against the wrong party.")

**B. Plaintiff's Claims for Violation of the ECPA and FSCA Fail as a Matter of Law Because Plaintiff Lacks Article III Standing and Plaintiff Fails to State a Claim.**

*1. Plaintiff lacks Article III standing to pursue claims under the ECPA and FSCA.*

Plaintiff lacks standing because he, at best, attempts to allege a technical violation of the ECPA and FSCA. Plaintiff alleges that on June 1, 2025, Google Analytics obtained access to the information he entered on the Website's checkout page. [Compl. ¶ 11]. Despite the Privacy Policy, Plaintiff claims that he was not "put on notice of a terms of service or privacy policy." [Compl. ¶ 11]. Not only is Plaintiff's allegation contradicted by the Website itself, which is incorporated into the Complaint, but even if true, that allegation reflects the type of purported "bare procedural violation, divorced from any concrete harm," that "cannot satisfy the demands of Article III." *Spokeo*, 578 U.S. at 341-42.

In *Spokeo*, the Supreme Court held that the plaintiff lacked Article III standing because his claim was based on a "bare procedural violation" of the Fair Credit Reporting Act of 1970 ("FCRA"). *Id.* The plaintiff became aware that the consumer reporting agency-defendant generated inaccurate information about him, but failed to show that the alleged inaccuracy caused any actual harm or presented a material risk of harm. *Id.* at 336. As the Court recognized, "a violation of" a statute's "procedural requirements may result in no harm." *Id.* at 342. The Eleventh Circuit and this Court have found that when a plaintiff alleges no harm caused by the procedural or technical violation of the statute, there is no standing under *Spokeo*:

- *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 929-30 (11th Cir. 2020) ("To avoid 'alleging a bare procedural violation,' the plaintiff must show either some harm caused by the violation or a material risk of harm.");

- *Cooper v. Atl. Credit & Fin. Inc*, 822 F. App'x 951, 954 (11th Cir. 2020) (holding that the plaintiff alleged only a bare procedural violation of the Fair Debt Collection Practices Act when she did not "allege that she suffered any harm beyond the alleged statutory violations");

- *Nicklaw v. CitiMortgage, Inc.,* 839 F.3d 998, 1003 (11th Cir. 2016) (holding that the plaintiff alleged only a bare procedural violation of various New York recording laws when he did "not allege that he lost money because [the defendant] failed to file the certificate," he did "not allege that his credit suffered," and did "not even allege that he . . . was aware that the certificate . . . had not been recorded");

- *Meeks v. Ocwen Loan Servicing LLC*, 681 F. App'x 791, 793 (11th Cir. 2017) (holding that the plaintiff "suffered at most a 'bare procedural violation'" when he had "undisputed actual knowledge of receipt of the [request for information]" despite Code of Federal Regulations requiring acknowledgment of the receipt of the request for information);

- *Louis v. Bluegreen Vacations Unlimited, Inc.,* No. 21-CV-61938-RAR, 2022 WL 1793058, at *1 (S.D. Fla. June 1, 2022) (holding "Plaintiffs fail[ed] to identify any concrete harm they have experienced as a result of the statutory violations" when they did not allege they were "impacted" by the violations "in any way" and thus amounted to "'bare procedural violation[s] . . . divorced from any concrete harm' [that] are . . . insufficient to confer standing"); and

- *Preisler v. Eastpoint Recovery Grp., Inc.*, No. 20-CV-62268-RAR, 2021 WL 2110794, at *5 (S.D. Fla. May 25, 2021) ("In sum, Preisler's attempt to bring claims for technical violations of the FDCPA fails. Mere violations, without a showing a concrete and particularized injury, are insufficient to convey standing.").

Here too, Plaintiff alleges nothing more than technical violations of the ECPA and FSCA based on the purported tracking of Plaintiff's use of the Website. Plaintiff cannot point to any concrete harm from his website visit. And while Plaintiff claims that the statutory violations caused economic harm because, allegedly, Google Analytics profited from the information, [Compl. ¶ 100], a third party's gain does not demonstrate that ***Plaintiff*** sustained an injury "in a personal and individual way." *Spokeo*, 578 U.S. at 341. The Court cannot "imagine or piece together an injury sufficient to give a plaintiff standing when [he] has demonstrated none, and [courts] are powerless

to create jurisdiction by embellishing a deficient allegation of injury." *Van Cleve v. U.S. Sec'y of Commerce*, No. 21-13699, 2022 WL 1640669, at *2 (11th Cir. May 24, 2022); *see also DiPierro v. Fla. Health Sci. Ctr., Inc.*, 737 F. Supp. 3d 1314, 1322 (M.D. Fla. 2024) (finding that class members lacked Article III standing where medical information stored at a hospital was breached because they do not demonstrate a concrete injury).

2. *Plaintiff fails to state a claim for violation of the ECPA and FSCA.*

The ECPA prohibits the unauthorized interception of electronic communications. *U.S. v. Steiger*, 318 F.3d 1039, 1047 (11th Cir. 2003) (citing 18 U.S.C. § 2511(1)). To state an ECPA claim, a plaintiff must allege that the defendant: (1) intentionally; (2) intercepted; (3) the contents of; (4) an electronic communication; (5) using a device. *Hamilton Grp. Funding, Inc. v. Basel*, 311 F. Supp. 3d 1307, 1314 (S.D. Fla. 2018). "Courts interpreting *contents* under the ECPA distinguish between 'a record or other information pertaining to a . . . customer' (known as 'record information') and the contents—i.e., 'substance, purport, or meaning'—of the communication itself.'" *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318 (S.D. Fla. 2021) (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("[The term 'contents' refers to the intended message conveyed by the communication, and does not include record information.")). The ECPA excludes "any communication from a tracking device" from the definition of "electronic communication." 18 U.S.C. 2510(12)(C).

Similarly, "[t]he FSCA prohibits intentional 'intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral or electronic communication.'" *Cardoso v. Whirlpool Corp.*, No. 21-CV-60784-WPD, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021). To state a claim for violation of the FSCA, a party must plead: "(1) an oral, wire, or electronic communication was (2) intentionally intercepted, disclosed or used (3) in violation of the FSCA." *Id.* The FSCA also "excludes '[a]ny communication from an electronic or mechanical

device which permits the tracking of the movement of a person or an object.'" *Goldstein*, 559 F. Supp at 1321 (quoting Fla. Stat. § 934.02(12)(c)).

Plaintiff fails to state claims under these statutes as a matter of law.

a. Plaintiff's ECPA and FSCA claims fail because there was no unauthorized interception.

As a preliminary matter, Plaintiff's consent precludes the threshold finding that any alleged tracking and disclosure to Google Analytics was unauthorized. The Privacy Policy stated that by using the Website, the visitor "understand[s] and agree[s] to the terms of the Privacy Policy," and agrees that the Privacy Policy is a "legally binding contract." [Privacy Policy, p. 1].[4] The Privacy Policy further states that the Website's operator "may share data with business partners or affiliates to help us perform statistical analysis, send you email or postal mail, provide customer support, or arrange for deliveries." [*Id.* p. 2]. The Privacy Policy warned Plaintiff not to submit any information that he did not want shared. [*Id.* p. 2]. Therefore, by using the Website, Plaintiff consented to the collection of his information, and the sharing of the same with "business partners or affiliates," as described in the Privacy Policy.

Because Plaintiff consented to the collection of his information and disclosure of that information, there was no unauthorized interception and therefore no violation of the ECPA and FSCA. *See Lakes v Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2005) (dismissing an ECPA claim because a reasonable website user would understand from the privacy policy that he is consenting to the use of cookies).

b. The ECPA and FSCA claims fail because Plaintiff does not allege that the Website intercepted an "electronic communication."

[4] The Court may consider the Privacy Policy in resolving this Motion under Rule 12(b)(6) because it is central to the Complaint. Indeed, Plaintiff's claims hinge on his false allegation that "[a]t no point during the transaction was Plaintiff put on notice of a terms of service or privacy policy." [Compl. ¶ 11]. The Privacy Policy's authenticity is not in dispute and is publicly available.

Plaintiff alleges that the Website operator disclosed "the name of the product" viewed, "its price, and the fact that it was added to the consumer's bag," as well as basic identifying information. [Compl. ¶¶ 83, 87]. While Defendant disputes that allegation, a record of the pages and content that Plaintiff viewed and purchased on the Website is not "substantive information" for purposes of the ECPA. "Such commands are equivalent to 'dialing, routing, addressing, or signaling information' that courts routinely deem non-contents." *Goldstein*, 559 F. Supp at 1322; *see also In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274-75 (3d Cir. 2016) (affirming a finding that "the information Google allegedly intercepted was not of the kind protected by the statute," because URLs which "revealed which videos a child watched" "is more akin to a telephone number" than a substantive conversation.). Indeed, "basic identification and address information" also does not constitute the contents of a communication. *In re Zynga Priv. Litig.*, 750 F.3d at 1108-09. Further, the ECPA exempts alleged tracking of Plaintiff's Website activity under the ECPA's tracking exemption.

The alleged recording of Plaintiff's activity on the Website is also not actionable under the FSCA. In *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CaA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021), the plaintiff alleged that while browsing Spirit Airlines website, Sprit utilized session replay scripts to intercept the substance of her communications with the website, including mouse clicks and movements, keystrokes, search terms, information input by the plaintiff into the website, and content viewed by the plaintiff. *Id.* at *1. The court held that this did not constitute content under the FSCA because the FSCA did not apply to session replay software, which is software that monitors and records an individual's interactions on a particular website. *Id.* at *4. Other Florida courts have cited *Jacome* with approval. *See Goldstein v. Luxottica of Am., Inc.*, No.

21-80546-CIV-CANNON/REINHART, 2021 WL 4093295, at *3 (S.D. Fla. Aug. 23, 2021); *Cardoso*, 2021 WL 2820822 at *2.

In *Goldstein*, the plaintiff claimed that the defendant violated the FSCA by recording his movements on the website (e.g., mouse clicks, scroll movements, and pages viewed) and information voluntarily input (keystrokes, copy and paste actions, search terms and information inputted by the plaintiff). *Goldstein*, 559 F. Supp at 1321. The court held that the defendant's recording of these movements fell within the FSCA's tracking exception. *Id.* at 1321-22. "Although the tracking in this case is virtual rather than physical . . . the plain language of the statute exempts the sort of tracking that triggered this action." *Id.* at 1321.

In short, any alleged recording of Plaintiff's website activity is precisely the type of conduct which courts routinely find is not actionable under the ECPA and FSCA. Therefore, Plaintiff has failed to state a claim under the ECPA and FSCA.

c. <u>The ECPA claim also fails under the party-exception rule.</u>

Even if Plaintiff did not consent to the recording—which he did—Plaintiff's ECPA claim still fails as a matter of law under the party exception, 18 U.S.C. § 2511(2)(d). The ECPA permits interception where "such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception." *Doe v. Wellstar Health Sys., Inc.*, 799 F. Supp. 3d 1268, 1277 (N.D. Ga. 2025); 18 U.S.C. § 2511(2)(d). This "party exception" does not apply if the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Wellstar Health*, 799 F. Supp. 3d at 1277.

In *T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-CV-5416-TWT, 2024 WL 5284883 (N.D. Ga. Aug. 28, 2024), the court recognized that "the weight of persuasive authority in . . . . pixel

tracking cases," including those concerning healthcare, dictates that the recipient of the communication cannot be held liable under the ECPA. *Id.* at *4 (collecting cases). As the Website's operator was the intended recipient of Plaintiff's purported communications, it cannot be held liable under the ECPA as a matter of law.

Plaintiff wrongfully alleges that the party exception does not apply because of the crime-fraud exemption to the party exception. Specifically, Plaintiff maintains that alleged violations of the Health Insurance Portability and Accounting Act ("HIPAA") render any reliance on the party exception invalid. [Compl. ¶ 138]. Not so. The tort-crime exemption only applies "if a party to the communication illegally intercepts the communication and then, in an **independent act**, uses it for the **purpose** of committing a crime or tort." *Piedmont*, 2024 WL 5284883 at *4 (emphasis added) (citing *Okash v. Essentia Health*, No. 2024 WL 1285779, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) ("'[I]t is well established that' the crime-tort exception 'only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself.'"). In *Okash*, the court held that the plaintiff's allegations of "simultaneous interception and disclosure of information to Meta" did not satisfy this "independent act" requirement. *Okash*, 2024 WL 1285779 at *4. Here too, the alleged simultaneous interception and disclosure of information to Google Analytics cannot satisfy the independent acts requirement. Plaintiff does not allege any "crime" or "tort" independent from the purported interception.

Additionally, the tort-crime exemption does not apply because Plaintiff does not allege that the *purpose* of the purported interception was to commit a crime or tort. Plaintiff alleges instead that the Website operator "used electronic communications to increase its profit margins." [Compl. ¶¶ 139, 4]. In *Okash*, the court held that even if the plaintiff's "targeted advertising" was itself considered an independent act, it would not satisfy the "purpose of committing a crime or tort"

requirement where the defendant's "primary motivation was to make money, not to injure plaintiffs tortiously." *Okash*, 2024 WL 1285779 at *4. Consistent with Plaintiff's allegations then, any interception that did occur was not to commit a crime or tort—but to increase profits. Therefore, the Website operator may not be held liable under the ECPA pursuant to the party exception.

**C. Plaintiff Fails to State a Claim for Civil Theft Pursuant to Fla. Stat. § 772.11.**

Separate from the ECPA and FSCA claims, Plaintiff brings a claim for civil theft pursuant to Fla. Stat. § 772.11. As a preliminary matter, the statute provides that "[b]efore filing an action for damages under this section, the person claiming an injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section." Fla. Stat. § 772.11(1). Plaintiff does not allege that he made any written demand—because none was made.

Even if Plaintiff did allege that he made a written demand, his claim still fails because Plaintiff does not allege that any civil theft occurred. To state a claim for civil theft under Florida law, the plaintiff must allege an injury resulting from a violation of the criminal theft statute, Fla. Stat. § 812.014. *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009). Specifically, the plaintiff must allege that the defendant: "(1) knowingly (2) obtained or used, or endeavored to obtain or use, [the plaintiff's] property with (3) felonious intent (4) either temporarily or permanently to (a) deprive [the plaintiff] of its right to or a benefit from the property or (b) appropriate the property to [the defendant's] own use or to the use of any person not entitled to the property." *Id.* Plaintiff does not allege that the Website operator obtained Plaintiff's property with "felonious intent," deprived Plaintiff of that property, and appropriated the property.

Rather, Plaintiff concedes he voluntarily entered the information which he claims was intercepted by the Website and consented to the use of that information consistent with the Privacy

Policy. The Website operator could not have stolen Plaintiff's property (or conveyed that property) to anyone not entitled to it. After all, "[t]here can be no conversion where a person consents to the possession by another of the assets allegedly converted." *In re General Plastics Corp.*, 184 B.R. 996, 1004 (S.D. Fla. Bankr. 1995). "Likewise, such consent clearly precludes the intent to deprive another person of his property as required by the Florida civil theft statute." *Id.* Indeed, Plaintiff does not, and cannot, allege that the Website operator had a "felonious intent." Per Plaintiff's allegations, Defendant "used electronic communications to increase its profit margins"—not to commit a felony. [Compl. ¶ 139].[5]

Therefore, Plaintiff's civil theft claim must be dismissed and Sunburn is entitled to its reasonable attorney's fees and costs pursuant to Fla. Stat. § 772.11(1).

**D. Plaintiff Fails to State a Claim for Violation of FDUTPA, Fla. Stat. § 501.204 and Lacks Article III Standing.**

*1. Plaintiff lacks constitutional standing under 12(b)(1).*

Plaintiff's failure to allege and demonstrate a concrete injury is also fatal to his FDUTPA claim because he lacks Article IIII standing. *See Baptist Hosp., Inc. v. Baker*m 84 So.3d 1200, 1204 (Fla. 1st DCA 2012) (finding that the trial court erred in designating the plaintiff as the class representative because he did not sustain actual damages and therefore lacked standing to pursue a FDUTPA claim). Although FDUTPA permits a plaintiff to pursue injunctive and declaratory

---

[5] Additionally, the Website operator is exempt from civil theft because the statute states that it "does not impose civil liability regarding the provision of health care, residential care, long-term care, or custodial care at a licensed facility or care provided by appropriately licensed personnel in any setting in which such personnel are authorized to practice." Fla. Stat. § 772.11(3). Plaintiff's Complaint is based on his theory that the Website operator is a licensed medical marijuana treatment center, which provides health care and pharmaceutical services, and therefore is obligated to adhere to the requirements of HIPPA. [Compl. ¶¶ 2, 5-7, 29, 32, 38-39]. Plaintiff cannot simultaneously allege that the Website operator is a health care organization, and that it is subject to section 772.11.

relief, "it cannot supplant Constitutional standing requirements." *Dapeer v. Neutrogena Corp,* 95F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) (citation omitted). FDUTPA and Article III require that a plaintiff sustain more than a speculative injury. *Macias v. HBC of Fla., Inc.*, 694 So.2d 88 (Fla. 3d DCA 1997). Article III of the Constitution requires that a plaintiff seeking injunctive and declaratory relief allege a threat of future harm, which Plaintiff does not do. *A&M Gerber*, 925 F.3d at 1210-11.

Here, Plaintiff alleges that he visited the Website one time on June 1, 2025. [Compl. ¶ 11]. There are no allegations suggesting that Plaintiff intends to, or will, visit the Website in the future, and therefore no "real and immediate . . . threat of future injury." *Barron*, 2015 WL 11182066 at 10 (finding that the plaintiffs lacked Article III standing because they did not allege that the was likely to purchase products from the defendant in the future). "Indeed, this Court recently held that plaintiffs alleging FDUTPA violations in a different case did not have Article III standing to pursue injunctive relief where they failed to allege an intent to purchase the defendant's products in the future." *Id. (citing In re Monat Hair Care Prod. Mktg. Sales Practices & Prod. Liab. Litig.*, No. 18-MD-02841, 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019). The same is true here.

2. *Plaintiff fails to State a Claim for a FDUTPA violation under Rule 12(b)(6).*

Plaintiff fails to state a claim for violation of FDUTPA. The three elements of a FDUTPA claim are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Marrache v. Bacardi U.S.A., Inc.*, 17 F. 4th 1084, 1097 (11th Cir. 2021). Because "FDUTPA claims uniquely sound in both tort and fraud, courts have regularly required that such claims satisfy the heightened standard under Rule 9(b)." *Jackson v. Anheuser-Busch InBev SA/NC, LLC*, No. 20-cv-23393-BLOOM/Louis, 2021 WL 3666312, at *8 (S.D. Fla. Aug. 18, 2021). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral

representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and manner in which they mislead the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id.* at *6. Plaintiff does not meet this standard.

Plaintiff claims that the Website operator violated the FDUTPA by integrating tracking technology into the Website and furnishing Plaintiff's information to Google. [Compl. ¶ 178]. However, this is insufficient to state a FDUTPA claim because Plaintiff does not allege that the Website operator engaged in any deceptive act or unfair practice, and certainly not with the particularity required for Rule 9(b). "An objective test is used to determine whether an act is deceptive under FDUTPA, and 'the plaintiff must show that the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'" *Marrache*, 17 F. 4th at 1098. The Privacy Policy informed Plaintiff that it may share information, and to "NOT UPLOAD OR SUBMIT ANY INFORMATION TO . . . THE WEBSITE THAT YOU DO NOT WANT TO BE SHARED . . . ." [Privacy Policy]. No reasonable consumer could claim to be surprised by the fact that the Website did, in fact, share information. *See Jacome*, 2021 WL 3087860 at *7 ("[T]here can be no reasonable expectation of privacy from a third-party website owner when Plaintiff voluntarily browses through that third-party's website.").

Further, Plaintiff does not allege that he sustained any actual damages with particularity. A plaintiff cannot state a cause of action for damages under FDUTPA if he fails to plead that he suffered actual damages. *See Macias v. HBC of Florida, Inc.*, 694 So. 2d 88, 90 (Fla. 3d DCA 1997) (holding that plaintiff failed to state a cause of action under FDUTPA as she suffered no actual damages and affirming dismissal of complaint with prejudice). Indeed, "[t]he members of [a] putative class who experienced no actual loss have no claim for damages under FDUTPA."

*Rollins, Inc. v. Butland*, 951 So. 2d 860, 873 (Fla. 2d DCA 2006). The FDUTPA "does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *City First Mortg. Corp. v.* B*arton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (quoting *Rollins*, 951 So. 2d at 873). Plaintiff's failure to allege that he sustained any actual damages is fatal to his FDUTPA claim. Under Florida law, "an invasion of privacy is not considered actual damages under FDUTPA." *Muy v. International Business Machines Corp.*, No. 4:19cv14-MW/CAS, 2019 WL 13199611, at *2 (N.D. Fla. July 12, 2019). Similarly, a plaintiff has not experienced actual damages under the FDUTPA simply because a defendant profited from the purported unfair behavior. *Marrache*, 17 F. 4th at 1090, 1101-02.

**E. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion.**

Plaintiff claims that Sunburn committed the tort of intrusion upon seclusion by disclosing his activity on the Website. [Compl. ¶¶ 181-188]. Florida recognizes a common law claim of intrusion upon seclusion, which requires intrusion into a place in which there is a reasonable expectation of privacy and which would be "highly offensive to a reasonable person," *Jackman v. Cebrink-Swartz*, 334 So. 3d 653, 656 (Fla. 2d DCA 2021); *see Rebalko v. Coral Springs*, 552 F. Supp. 3d 1285, 1332 (S.D. Fla. 2020). "Florida law explicitly requires an intrusion into a private place and **not merely into a private activity**." *Pet Supermarket, Inc. v. Eldridge*, 360 So. 3d 1201, 1207 (Fla. 3d DCA 2023) (emphasis added) (quoting *Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 727 (11th Cir. 2011)); *see also Hammer v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020).

Courts in the Eleventh Circuit have consistently found that tracking tools installed onto a website do not constitute an intrusion into a private place, but at best, interfere with a private activity. In *W.W. v. Orlando Health, Inc.*, No. 66:24-CV-1068-JSS-RMN, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025), the court dismissed a claim for intrusion upon seclusion based on website tools

which tracked movements. *Id.* at *9. In *Wellstar Health Sys.*, the court reached the same conclusion. *Wellstar Health Sys.,* 799 F. Supp. 3d at 1274. There, the plaintiffs alleged that "Defendant committed the tort of invasion of privacy by allowing data collection tools to track patients' activity on Defendant's Web Properties." *Id.* The court held that "[w]here, as here, Plaintiffs voluntarily provided their information to Defendant, there is no intrusion upon seclusion." *Id.* (citation omitted) (dismissing a claim for intrusion upon seclusion under Georgia law). So too here, Plaintiff fails to allege any basis to support an intrusion upon seclusion by way of tracking Plaintiff's Website activity. Plaintiff's claim fails as a matter of law.

**F. Plaintiff's Complaint Constitutes an Impermissible Shotgun Pleading.**

Finally, the Complaint must be dismissed as an improper shotgun pleading because Plaintiff incorporates all allegations in the Complaint in each count. [Compl. ¶¶ 144, 158, 170, and 181]. The Eleventh Circuit "has condemned the incorporation of preceding paragraphs where a complaint 'contains several counts, each one incorporating by reference the allegations of its predecessors [ie, predecessor counts], leading to a situation where most of the counts (ie, all but the first), contain irrelevant factual allegations and legal conclusions." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1324 (11th Cir. 2015). As such, Plaintiff's shotgun Complaint should be dismissed.

## V. <u>CONCLUSION</u>

The claims against Sunburn must be dismissed because Plaintiff lacks standing. Additionally, Plaintiff has failed to state valid causes of action against Sunburn for violations of the ECPA and FSCA, civil theft, violation of FDUTPA, and intrusion upon seclusion. Finally, Plaintiff's Complaint must be dismissed as a shotgun pleading. For these reasons, this Court must dismiss Plaintiffs' claims with prejudice under Rules 12(b)(1) and 12(b)(6).

Dated: March 27, 2026

MCDOWELL HETHERINGTON LLP
Attorneys for Defendant
2385 N.W. Executive Center Drive, Suite 400
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax

By: s/Danielle S. Ploshnick
DANIELLE S. PLOSHNICK
Fla. Bar No. 118911
danielle.ploshnick@mhllp.com

MCDOWELL HETHERINGTON LLP
Attorneys for Defendant
*THOMAS F.A. HETHERINGTON
Texas Bar No. 24007359
tom.hetherington@mhllp.com
*ANDREW R. KASNER
Texas Bar No. 24078770
andrew.kasner@mhllp.com
1001 Fannin Street, Suite 2400
Houston, TX 77002
(713) 337-5580
(713) 337-8850 fax
**Pro Hac Vice* Motions filed simultaneously

## CERTIFICATE OF SERVICE

I certify that on March 27, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Sarah N. Westcot, Esq.
Stephen A. Beck, Esq.
Bursor & Fisher, P.A.
701 Brickell Ave., Suite 2100
Miami, FL 33131
swestcot@bursor.com
sbeck@bursor.com
*Attorneys for Plaintiff*

s/Danielle S. Ploshnick
Danielle S. Ploshnick