**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| JOHN DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>GREEN SENTRY HOLDINGS, LLC d/b/a SUNBURN CANNABIS,<br><br>Defendant. | CASE NO. 9:26-cv-80051-EA<br><br>Hon. Judge Ed Artau |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant owns and operates www.sunburncannabis.com (the "Website"), an online medical marijuana dispensary that allows patients to order and purchase medical marijuana. Both Congress and the Florida Legislature recognize the importance of maintaining the privacy of patients' protected health information ("PHI") and personally identifiable information ("PII"). *See* 42 U.S.C. § 1320d; Fla. Stat. §456.057; *cf.* Fla. Stat. § 381.987(1); *see generally W.W. v. Orlando Health*, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025) (denying the defendant's motion to dismiss in a healthcare website tracking case); *D.S. v. Tallahassee Mem'l HealthCare*, 2024 WL 2318621, at *1–2 (N.D. Fla. May 22, 2024) (same). Despite Defendant Green Sentry Holdings, LLC's ("Defendant" or "Sunburn Cannabis") duty to prevent the unauthorized disclosure of sensitive and confidential health information from unlawful use and disclosure, Defendant intercepts and discloses this information to Google LLC ("Google") when patients enter details and purchase products on the Website.

Plaintiff John Doe ("Plaintiff") is a Florida resident who accessed Defendant's Website to purchase medical marijuana. *See* Plaintiff's First Amended Complaint (ECF No. 12) ("FAC") ¶

11. Despite reasonable expectations of confidentiality, the information Plaintiff provided in connection to his medical purchase was intercepted by Defendant through its use of Google Analytics (the "Tracking Technologies") and disclosed to third parties. FAC ¶¶ 11, 89–95. This includes private, and legally protected information such as the product(s) purchased, products quantity, and product prices, as well as information sufficient for the third parties to uncover the identity of the individual making the purchase. FAC ¶¶ 82–95. Such disclosures were not made to provide Plaintiff with services, but rather, to bombard him with targeted advertising. FAC ¶¶ 68–75, 77–95. This conduct is an egregious violation of Defendant's duties as a medical provider and is unlawful under both state and federal law. FAC ¶¶ 68–75, 94.

Defendant now moves to dismiss Plaintiff's Complaint. *See* Defendant's Motion to Dismiss Plaintiff's Class Action Complaint (ECF No. 19) ("MTD" or "Motion"). However, nearly all of Defendant's arguments are premised on misstatements of both the facts and the law. For the reasons set forth herein, Plaintiff respectfully requests this Court deny Defendant's Motion in its entirety.

**LEGAL STANDARD**

"Challenges to a party's standing are properly raised under Federal Rule of Civil Procedure 12(b)(1) as a jurisdictional challenge to a court's subject matter jurisdiction. *Cobbs v. PetMed Express, Inc.*, 2026 WL 905375, at *2 (S.D. Fla. Jan. 14, 2026) (citations omitted). "The Court must merely look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true for the purposes of the motion." *Id.* (citations omitted).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must include 'enough facts to state a claim to relief that a is plausible on its face.'" *Hunt v. Aimco Props., L.P.*,

814 F.3d 1213, 1221 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp*., 693 F.3d 1333, 1335 (11th Cir. 2012); *Ashcroft v. Iqba*l, 556 U.S. 662, 678 (2009).

A court considering a 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits-but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009) ("A plaintiff must provide enough factual allegations, which are assumed to be true, 'to raise a right to relief above the speculative level.'"). "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Oppenheimer v. Rakontur LLC,* 2026 WL 1700520, at *2 (S.D. Fla. June 12, 2026) (citing *Magluta v. Samples*, 375 F3.d 1269, 1273 (11th Cir. 2004)).

## <u>ARGUMENT</u>[1]

### I. PLAINTIFF HAS ARTICLE III STANDING TO PURSUE HIS CLAIMS

Defendant argues that "Plaintiff lacks standing" because "Plaintiff alleges nothing more than technical violations of the ECPA and FSCA." *See* MTD at 7–8. Not so.

To establish a concrete and particularized injury, the injury suffered must be one traditionally recognized by American courts. *Petris v. Sportsman's Warehouse, Inc.*, 736 F. Supp. 3d 260, 270–71 (W.D. Pa. June 3, 2024) ("The focus of the analysis for Article III purposes is the harm, not the cause of action or remedy. In other words . . . [i]t is not necessary . . . for a plaintiff

[1] Plaintiff withdraws his claim for civil theft.

asserting such a claim to plead or establish the elements of a traditional cause of action, but rather, only that an analogous harm exists."). As the Supreme Court has recognized, "disclosure of private information[] and intrusion upon seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). In determining "whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). The Supreme Court has instructed courts to identify if an alleged injury bears "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025) (citing *TransUnion*, 594 U.S. at 424) (cleaned up). The Eleventh Circuit is in accord, recognizing "an individual has an interest in preventing disclosure of personal information." *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989) ("[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person.").

Here, Plaintiff alleges precisely such a disclosure. FAC ¶ 95 ("Defendant deprived Plaintiff of his privacy rights when it implemented a system that surreptitiously tracked and recorded Plaintiff's and other online consumers' confidential communications, personally identifiable information, and protected health information."). Indeed, the FAC details, with screenshots, the specific data fields transmitted, including information related to the specific product purchased and personally identifiable information (cid and auid identifiers, IP address, and browser fingerprints). Plaintiff's allegations mirror what courts require for standing. *See e.g.* FAC ¶¶ 77–95, Figs. 2–12; *Cobbs v. PetMed Express, Inc.*, 2026 WL 905375 at *3–*4. (S.D. Fla. Jan. 14, 2026) (holding that a defendant "knowingly installing third-party tracker software on its

website" which intercepts "confidential data transmitted via Defendant's website" was sufficient to confer standing"). Given Plaintiff's detailed allegations grounded in the underlying privacy harm and loss of control over personal information, Defendant's case law which relies on "bare procedural violations" is inapposite. *Compare* FAC ¶¶ 11–12, 77–95, Figs. 2–12; *with* MTD at 8.

## II. DEFENDANT CANNOT RELY ON ITS PRIVACY POLICY TO CURE ITS UNLAWFUL CONDUCT

Defendant argues "[a] privacy policy disclosed on the website, however, informed Plaintiff that the website in fact collected information about visitor activity and that said information may be shared with third parties." *See e.g.* MTD at 1, 4, 5. That is wrong, as Defendant fails to establish that Plaintiff was aware of and agreed to its purported privacy policy.

Defendant's consent argument fails at the outset because it rests on a document that is not properly before the Court. Defendant contends that Plaintiff "incorporates" the Privacy Policy into the First Amended Complaint. *See* MTD at 4 (citing FAC ¶ 81). Not so. Paragraph 81 merely alleges "Defendant fails to obtain consent from its patients regarding these disclosures." FAC ¶ 81. This allegation does not reference, quote, attach, adopt, or otherwise incorporate any Privacy Policy.

Defendant's argument also presupposes the existence of a valid, enforceable agreement to which Plaintiff manifested assent. However, Defendant ignores that the mere existence of a Privacy Policy does not establish consent. Indeed, the Eleventh Circuit's binding precedent on internet contract law requires an analysis as to whether the interface provided a reasonably prudent user with inquiry notice of the terms and an unambiguous manifestation of assent. *Tejon v. Zeus Networks, LLC*, 174 F.4th 1322, 1326 (11th Cir. 2026). Florida courts only enforce internet contracts if the "purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry

notice." *Id*. In *Tejon*, the Eleventh Circuit held that a 'Terms of Service' hyperlink displayed in small, gray text beneath prominent action buttons did not place a reasonably prudent user on inquiry notice and therefore formed no binding agreement. *Id.* at 1324–28. The same defect forecloses Defendant's argument here: Plaintiff alleges "[a]t no point during the transaction was Plaintiff put on notice of a terms of service or privacy policy." FAC ¶ 11. Defendant has the burden to establish consent and whether Defendant's interface satisfied *Tejon*'s inquiry-notice standard is a fact question that cannot be resolved on the pleadings. Nor may Defendant cure that omission by attempting to make this fact-bound showing for the first time on reply. *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").

## III. PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE ECPA AND FSCA

Defendant argues that Plaintiff "fails to state a claim for violation of the ECPA and FSCA." MTD at 9. Defendant is wrong on both counts.

To state a claim under the ECPA, a plaintiff must allege that the defendant (1) intentionally; (2) intercepted; (3) the contents of; (4) an electronic communication; (5) using a device. *Hamilton Grp Funding, Inc. v. Basel*, 311 F. Supp. 3d 1307, 1314 (S.D. Fla. 2018). Similarly, "[t]he FSCA prohibits 'intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept any . . . electronic communication.'" *W.W.*, 2025 WL 722892, at *3. Notably "[b]ecause the FSCA was modeled after the Wiretap Act, Florida courts construe the FSCA's provisions in accord with the meaning given to analogous provisions of the Wiretap Act." *Id.* (citing *Minotty v. Baudo*, 42 So. 3d 824, 831 (Fla. Dist. Ct. App. 2010)). Here, Plaintiff alleges that Defendant intentionally intercepted his PII and PHI which Plaintiff and Class Members

communicated to the Website and sent the contents of that communication to Google. *See* FAC ¶¶ 77–95, 124–28.

### A. Plaintiff Did Not Consent To Defendant's Conduct

Defendant argues that "Plaintiff consented to the collection of his information and disclosure of that information." MTD at 10. That is wrong. *See supra* Sec. II.

*First*, Plaintiff premises allegations on Defendant's ***unlawful*** implementation of the Tracking Technologies. *See generally* FAC. Consent is rarely a defense to criminal conduct, and here, Defendant's conduct falls squarely within what the U.S. Department of Health and Human Services has warned is unlawful:

> Regulated entities [those to which HIPAA applies] are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures.

FAC ¶ 39 (citations omitted); *see also* FAC ¶¶ 40, 42–45 (FTC and HHS pronouncements). Defendant failed to implement the technologies in compliance with its obligations under state and federal law. FAC ¶ 177. Plaintiff "never consented" to Defendant "intercept[ing] and disclos[ing] his confidential information to unknown third parties" FAC ¶ 93. Defendant's knowledge of its conduct being unlawful stems from the bedrock principle that "every citizen is presumed to know the law." *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 265 (2020).

*Second*, HIPAA distinguishes between "consent" and "authorization." As a regulated entity under HIPAA, Defendant must adhere to the heightened authorization requirements when PHI and PII are being disclosed to third parties (including, as is the case here, Google). FAC ¶¶ 7, 32–36, 89–94. While consent may allow certain uses or disclosures of PHI, it is not sufficient for uses or disclosures that require authorization under 45 C.F.R. § 164.508, which encompasses most uses,

including marketing. *Compare* 45 C.F.R. § 164.506 (consent) *with* 45 C.F.R. § 164.508 (authorizations). Likewise, in Florida "[a]bsent a specific written release or authorization permitting utilization of patient information for solicitation or marketing the sale of goods or services, any use of that information for those purposes is prohibited." Fla. Stat. § 456.057(7)(b). Plaintiff never "authorized or otherwise permitted Defendant to intercept and disclose his confidential information to unknown third parties." FAC ¶ 93.

A person cannot consent to conduct via a Privacy Policy that expressly disclaims the very conduct at issue. *See e.g. WBSY Licensing, LLC v. Duval Cnty. Sch. Bd.*, 2022 WL 1750425, at *2 (M.D. Fla. May 10, 2022) ("it is generally improper for a court to interpret an ambiguous contract at the motion to dismiss stage"); *In re Facebook, Inc., Consumer Priv. User Profile Litig*., 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019) ("if the contract language at issue is reasonably susceptible to more than one interpretation, . . . the Court cannot decide the consent issue . . . at the motion to dismiss stage.").

*Third*, Plaintiff's FSCA claim independently survives because Florida is a two-party consent state. Unlike the federal Wiretap Act, the FSCA requires that "all of the parties to the communication" give "prior consent to such interception." Fla. Stat. § 934.03(3)(d); FAC ¶ 22. Defendant's purported consent to route Plaintiff's communications to Google cannot satisfy the statute as Plaintiff's consent was also required. Given that Plaintiff alleges he "never consented, agreed, authorized, or otherwise permitted Defendant to intercept and disclose his confidential information to unknown third parties" (FAC ¶¶ 93, 156) and Defendant did not establish Plaintiff consented to the Privacy Policy (*see supra* Sec. II), Defendant's conduct violates the FSCA regardless of any consent Defendant purported to give on its own behalf.

### B. Plaintiff Alleges Defendant Intercepted "Electronic Communications"

Defendant suggests that Plaintiff fails to allege the Website intercepted "contents" under the ECPA and FSCA. *See* MTD at 11. Not so.

Under the ECPA and FSCA, contents include "any information concerning the substance, purport, or meaning of [a] communication. *See* 18 U.S.C. § 2510 (8); *see also* Fla. Stat. § 934.02(7). In healthcare cases involving these Tracking Technologies, federal courts have held that intercepted PHI and PII qualify as "contents." *See e.g. W.W.*, 2025 WL 722892, at *5–6; *see also Cobbs*, 2026 WL 905375 at *6 (holding that full-string URLs, clicked button's names, and form entries reveal the "'substance,' 'purport,' and/or 'meaning' of a communication."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) ("[T]he log-in buttons and the kinds of descriptive URLs identified in the Smith Decl. are "contents" within the meaning of the statute.")

Here, the FAC includes screenshots from the Website with specific examples of the disclosed contents. Plaintiff alleges that "Plaintiff's communications with Defendant were disclosed by Defendant to Google and/or intercepted in transit by Google, in real time, via detailed URLs, which contain the medically sensitive information entered into the Website." FAC ¶ 89. Plaintiff alleges that the Website discloses when a user clicks on "view bag," "checkout," and "place order" buttons. FAC ¶¶ 84–86, Figs. 6–12. The clicked button's names are no different from the contents of a manually typed message being disclosed after a user clicks send because the names are what the user is communicating.

Defendant's case law is unpersuasive, as it concerns a fundamentally different tracking technology, session replay software.[2] *See Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d

---

[2] Session replay software, unlike the tracking technology here, "tracks a website browser's movement" to recreate a user's session on a website. See Jacome, 2021 WL 3087860, at *3.

1318, 1319 (S.D. Fla. 2021) (session replay software); *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *1 (Fla.Cir.Ct. June 17, 2021) (same). As the court recognized in *W.W.*, "the FSCA was designed to protect precisely the information at issue in this case—private medical information." *Compare Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) (holding that session replay software for a retail website is not intercepting content); *with W.W.*, 2025 WL 722892 at *3, 6 (distinguishing *Jacome* and holding that specific medical information a user communicates to a website is the "contents" of an electronic communication). Like in *W.W.*, Plaintiff alleges that "information disclosed to Google by Defendant allows Google to discern the identities of specific individuals in addition to learning the details of their purchase" such that this Court should adopt the same rule. FAC ¶ 92. Tracking the specific products a user purchases falls under the "contents" of their communication because the "purport" of the user's communication with the Website is purchasing the product.

*Goldstein* is similarly unavailing. There the court applied the FSCA's tracking exception to tracking website movements. *Goldstein v. Costco Wholesale Corp.*, 559 F.Supp.3d 1318, 1321 (relying on *Minotty v. Baudo*, 42 So.3d 824, 830–32 (Fla. 4th DCA 2010) (holding that silent video recordings inside a doctor's office do not constitute "contents" of a communication)). Unlike in *Goldstein*, here, Plaintiff alleges that the Website disclosed "communications with Defendant . . . contain[ing] the medically sensitive information entered into the Website." FAC ¶ 89. Rather than capturing movement in a doctor's office, Plaintiff alleges that the Website intercepts the equivalent of what a patient communicates to their doctor, like what specific medical products they purchase. *See e.g.* FAC Figs. 2–12.

Defendant posits, incorrectly, that "basic identification and address information also does not constitute the contents of a communication." *See* MTD at 11 (internal citations omitted).

Whether information is content or not depends on how that information is generated. *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021) (holding that identifying information such as a name entered into a form is "contents"); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (noting that "contents" includes user typed information such as email addresses*); In re Pharmatrak, Inc. Priv. Litig.*, 329 F.3d 9, 15, 18–19 (1st Cir. 2003) (finding that "contents" includes personal information typed into an online form).

Here, Plaintiff alleges that "Defendant sent out these identifiers (e.g. cid, IP address, and device information) with each patient's 'event' data" which "allows Google to discern identities of specific individuals and associates this information with their purchase details." FAC ¶¶ 91–92. The First Amended Complaint states that Defendant discloses "data sufficient for Google to create a browser-fingerprint identifier with each re-directed communication described herein, including patient communications concerning individual medical marijuana purchases." FAC ¶ 90.

**C. Defendant's Conduct Falls Squarely Within The Crime-Tort Exception**

Defendant also argues that Plaintiff's ECPA claim is barred because the crime-tort exception does not apply. MTD at 13. That is wrong.

*W.W. v. Orlando Health, Inc*. is directly on point. There, the court found "no basis in the text of the Wiretap Act's crime-tort exception to conclude that these allegations are insufficient." *W.W. v. Orlando Health, Inc.*, 2025 WL 722892, at *7.

Similarly, in *Cobbs v. PetMed Express, Inc.*, the court found that:

> [L]iability for tortious consented-to interceptions plausibly applies here, at least to withstand dismissal under Rule 12(b)(6), given Plaintiffs' allegation that Defendant and the third parties knowingly intercepted Plaintiffs' electronic communications without Plaintiffs' consent to exploit the confidential communications for targeted advertisements and direct marketing and in violation of state privacy laws.

*Cobbs*, 2026 WL 905375, at *5.

Here, Plaintiff alleges Defendant—a HIPAA-covered entity—intercepted and disclosed Plaintiff's PHI to Google in violation of clear pronouncements by the FTC and the Department of Health and Human Services. FAC ¶¶ 49, 132–139. Such an unauthorized disclosure of PHI for marketing purposes (both Defendant's and Google's own independent use) is unlawful absent a written authorization. 45 C.F.R. § 164.508; Fla. Stat. § 456.057(7)(b). To invoke the crime-tort exception, a plaintiff must allege a criminal or tortious purpose that is "separate and independent from the act of the recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). Courts have applied this principle where an intentional disclosure of intercepted information constitutes a separate wrongful act independent from the interception itself. *See Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849. Since Plaintiff's protected health information was intercepted for the purpose of illegal disclosure to third-party advertisers, the crime-tort exception is triggered. *See Cobbs*, 2026 WL 905375, at *5. The Middle District of Florida is in accord and further explained application of the crime-tort exception is in any event "more fit for resolution at summary judgment or trial than at the motion to dismiss stage." *W.W.,* 2025 WL 722892, at *7.

Defendant's remaining arguments are unavailing. Defendant's reliance on *T.D. v. Piedmont* is misplaced. There, the court's decision turned on the "weight of persuasive authority" in pixel tracking cases finding recipients of communication cannot be held liable under the ECPA. *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024). However, a majority of courts throughout the nation have found disclosures in violation of HIPAA and without consent satisfy the crime-tort exception. *See e.g. Cobbs,* 2026 WL 905375*,* at *7 (reviewing analogous allegations and arriving at the same conclusion); *W.W.,* 2025 WL 722892, at *8 (same); *Doe v. Wellstar Health Sys., Inc.,* 799 F. Supp. 3d 1268, 1280 (N.D. Ga. 2025)

(same); *Smith v. Rack Room Shoes*, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ("Plaintiff's personally identifiable information for advertising, in contradiction to the commitments it made in its privacy policy, can plausibly constitute a further invasion of privacy beyond the act of intercepting the information alone.").

Defendant's reliance on *Okash v. Essentia Health* is similarly misplaced. There, the court's decision turned on disclosure not being an act independent from interception. *See Okash v. Essentia Health*, 2024 WL 1285779, at *5 (D. Minn. Mar. 26, 2024). A majority of courts disagree, repeatedly holding that disclosure is independent from interception. *See Cobbs,* 2026 WL 905375 at *7; *W.W.,* 2025 WL 722892 at *8; *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849 (E.D. Cal. 2025) ("Courts have applied the ECPA's crime-tort exception where the intentional disclosure of private information constituted a further impropriety independent and separate from [the] interception of private information.") (internal quotations omitted).

Indeed, Defendant concedes that application of the crime-tort exception turns on the purpose of the interception, yet argues that Defendant's purpose here was not tortious, but rather financial. MTD at 13–14. Courts have repeatedly held disclosure of protected health information is a sufficiently tortious purpose for the crime-tort exception irrespective of a financial motive. *See A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) (finding boosted revenues achieved through tortious disclosure satisfies crime-tort exception); *B.N. v. Oregon Reprod. Med., LLC*, 2026 WL 915343, at *3 ("a violation of HIPAA can fall under ECPA's crime-tort exception"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) ("even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply"); *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *5 (C.D. Cal. Jan. 30, 2025) ("knowingly . . . disclos[ing] individually identifiable health information

to another person, 42 U.S.C. § 1320d-6, in violation of HIPAA, may satisfy the crime-tort exception."); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 WL 4350328, at *5 (E.D. Pa. Sept. 30, 2024) ("Plaintiffs need not plead financial motive to invoke the crime-tort exception as they have already sufficiently pleaded Defendant's intention to violate HIPAA").

Plaintiff's allegations are clear, Defendant violated HIPAA by disclosing protected health information to a third-party. FAC ¶¶ 132-139. Similarly, Defendant also violated individuals' privacy interests by failing to keep this information confidential. Therefore, the crime-tort exception applies and the claim should proceed.

## IV. PLAINTIFF STATES A CLAIM FOR FDUTPA VIOLATIONS.

### A. Plaintiff Has Article III Standing For The FDUTPA Claims

Defendant incorrectly asserts that Plaintiff does not "allege and demonstrate a concrete injury" for FDUTPA purposes. *See* MTD at 15. Defendant attacks "seeking injunctive and declaratory relief" not monetary damages. *See* MTD at 16.

Plaintiff has established standing for monetary damages and injunctive and declaratory relief. *See Debernadis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084–88 (11th Cir. 2019) (finding standing for monetary damages when a plaintiff buys a misleading product from a business because "an economic injury qualifies as a concrete injury"). Here, Plaintiff alleges that he "purchased medical marijuana" from Defendant whom "integrated tracking technology into its website that disclosed Plaintiff's and Class members' information—including their health information, personally identifiable information, and online activity—to Google." *See* FAC ¶¶ 11, 178.

Defendant also argues that Plaintiff must allege that he "intends to, or will, visit the Website in the future" to establish a substantial risk of future injury. *See* MTD at 16. That is wrong. *Compare Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889–90 (11th Cir. 2023) (holding

misuse of personal information presents a present injury for monetary damages and a substantial risk of future injury for injunctive relief); *with Smith v. Mirelli*, 93 F.4th 1206, 1212 (11th Cir. 2024) (finding no real and immediate threat of future injury from allegations about defective sunglasses); *see also Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1190 (M.D. Fla. 2022) ("In the absence of actual damages, the FDUTPA permits any aggrieved party to pursue injunctive relief.").

Here, Plaintiff states that "information shared by Defendant with Google allows Google to discern identities of specific individuals and associates this information with their purchase details." FAC ¶ 92. "Such disclosures are an invasion of privacy, lead to harassing targeted advertising, and violate federal and state law." FAC ¶ 94. Defendant's misuse allows Google to "profit by using the intercepted data for targeted advertising purposes" even after the initial disclosure. *See* FAC ¶ 87. "Without declaratory or injunctive relief, nothing will stop those harm[s] from occurring." *Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1209 (11th Cir. 2025) (internal quotations and citations omitted).

**B. Plaintiff States A Claim For A FDUTPA Violation**

Defendant posits that "Plaintiff does not allege that the Website operator engaged in any deceptive or unfair practice" with particularity required under Rule 9(b). *See* MTD at 17. That is wrong.

As the Florida Supreme Court has recognized, "[a]n unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See PNR, Inc. v. Beacon Property Management, Inc.*¸ 842 So. 2d 773, 777 (Fla. 2003). Moreover, in enacting FDUTPA, the Florida Legislature specified that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15

U.S.C. § 45(a)(1), as of July 1, 2017." *See* Fla. Stat. § 501.204(2). Florida gives "due consideration and great weight . . . to the interpretations of the Federal Trade Commission." FAC ¶ 175 (quoting Fla. Stat. § 501.204(2)). "The FTC has made clear that 'disclosing consumers' health information for advertising without their affirmative express may be an unfair practice.'" FAC ¶ 176 (internal citation omitted). Rule 9(b) "requires alleging the who, what, when where, and how of the fraudulent conduct." *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1296 (11th Cir. 2025) (internal quotations omitted). A plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff; and (4) what the defendants gained by the alleged fraud." *Id.* (internal quotations omitted). Plaintiff has pled such.

Here, Plaintiff alleges that "Defendant engaged in unfair and deceptive practices by integrating tracking technology into its website that disclosed Plaintiff's and Class members' information—including their health information, personally identifiable information, and online activity—to Google." FAC ¶ 178. "On or around June 1, 2025, Plaintiff visited www.sunburncannabis.com," when and where the deception occurred. *See* FAC ¶ 11. Defendant is the person responsible for the statement because "Defendant . . . owns and operates the Website." FAC ¶ 2. The First Amended Complaint contains screenshots of specific deceptive content on the Website stating Defendant "won't sell your information, ever." FAC Fig. 10. Plaintiff shows screenshots of Defendant disclosing personal information for profit. *See e.g.* FAC Fig. 12. Defendant benefitted when "Defendant paid these third parties to collect and analyze that information so Defendant could better target advertisements and marketing materials." FAC ¶ 100.

Furthermore, Defendant's reliance on the Privacy Policy is misguided. Plaintiff "reasonably expected that his electronic communications with Defendant would remain

confidential" because "federal and state laws require medical marijuana treatments centers to keep information about patients and treatments confidential." FAC ¶ 48; *see also* Fla. Stat. § 381.986(10)(f)(4); 42 U.S.C. § 1320; 45 C.F.R. §§ 164.502, 165.508(a), 164.514(b)(2)(i). Plaintiff should not expect his medical providers to violate the law.

Defendant also suggests Plaintiff failed "to allege that he sustained any actual damages." *See* MTD at 18. Not so. Under FDUTPA, direct damages are measured by the difference between the value paid and the value of the product received. *Cf. Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986–87 (11th Cir. 2016) (a business's "misrepresentation may allow it to command a price premium and to overcharge customers systemically"); *see also Debernardis*, 942 F.3d at 1084–88 (finding a business's deception violating federal law caused diminution of value to the product it sold).

Here, Plaintiff "purchased medical marijuana" from Defendant. FAC ¶ 11. "[F]ederal and state laws impose a legal obligation on Defendant to keep health information about marijuana usage and consumption—including details about marijuana treatments or prescriptions—strictly confidential." FAC ¶ 7 (internal citations omitted). Defendant "caused third parties—like Google—to profit from Plaintiff's and Class members' personal information" "without any renumeration to the Plaintiff or Class members" FAC ¶ 100–01. The value of the product Plaintiff received is less than the value Defendant promised because the product caused unlawful disclosure of medical information. *See Carriuolo*, 823 F.3d at 986 (finding that FDUTPA damages are the difference between the value of the product as promised and the value of the product received).

Assuming, *arguendo*, Plaintiff did not plead actual damages, he is still entitled to seek injunctive relief under the statute. *See Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1190 (M.D.

Fla. 2022) ("In the absence of actual damages, the FDUTPA permits any aggrieved party to pursue injunctive relief.").

## V. PLAINTIFF STATES A CLAIM FOR INTRUSION UPON SECLUSION.

Defendant argues that Plaintiff's intrusion upon seclusion claim fails because Plaintiff has not alleged an intrusion into a "private place." MTD at 18. That is wrong.

Florida recognizes intrusion upon seclusion for physical or electronic intrusion "into a 'place' in which there is a reasonable expectation of privacy." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003). Intrusion claims require a private quarter, physical or electronic intrusion into that quarter, and an intrusion highly offensive to a reasonable person. *Stasiak v. Kingswood Co-op, Inc.*, 2012 WL 527537, at *2 (M.D. Fla. Feb. 17, 2012).

Defendant contends that no website can qualify as a private quarter. See MTD at 18–19. Not so. Florida courts have addressed the private quarter requirement sparingly, but have indicated that, at minimum, a private quarter must be shielded from public view. *See Rebalko v. City of Coral Springs*, 2020 WL 6446042, at *1333 (S.D. Fla. Nov. 3, 2020) (finding a public highway is not a private quarter because it is plainly visible to the public); *Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 727 (11th Cir. 2011) (finding a recording on a public street did not occur in a private place because it happened in public view). Defendant operates a state-licensed medical marijuana treatment center with a patient-restricted portal. FAC ¶¶ 2–3. Florida law limits Defendant's customers to individuals who hold a state-issued medical marijuana card—persons diagnosed with a qualifying condition. FAC ¶¶ 2–3. Florida law expressly prohibits Defendant from "disclosing personal and confidential information of the qualified patient." Fla. Stat. § 381.986(10)(f)(4). HIPAA imposes a parallel obligation. 45 C.F.R. § 164.508(a)(1); FAC ¶ 7. Given the statutorily enforced confidentiality obligations governing Defendant's Website, the Website is shielded from public view and qualifies as a private quarter.

Defendant electronically intruded on this private quarter when it intercepted patient communications and routed that data to Google without patients' knowledge or consent. FAC ¶¶ 64, 83–85, 155. Such intrusion is highly offensive to a reasonable person. Congress, the Florida Legislature, and federal regulators each independently concluded that disclosure of this category of information is so harmful that they enacted criminal prohibitions against it, including the Wiretap Act, the Florida Security of Communications Act, and Fla. Stat. § 381.986(10)(f)(4). FAC ¶¶ 184–185. That convergent legislative judgment reflects what a reasonable person would find highly offensive.

Defendant's arguments to the contrary unavailing. Defendant's reliance on *W.W.* is misplaced. There, the court's decision turned on the fact that the defendant's website was publicly accessible and, therefore, not a private quarter. *W.W.*, 2025 WL 722892, at *9. Defendant's website, by contrast, is accessible only to individuals diagnosed with a qualifying condition, meaning it is shielded from public view and qualifies as a private quarter. FAC ¶¶ 2–3.

Defendant's reliance on *Wellstar* is similarly unpersuasive. There, the court's decision turned on the plaintiff's voluntarily provision of personal information. *See Wellstar*, 799 F. Supp. 3d at 1277. Here, unlike in *Wellstar,* Defendant's conduct is governed by Florida law, not Georgia law, and disclosure of Plaintiff's information is regulated by Fla. Stat. § 381.986(10)(f)(4). Plaintiff's disclosure to Defendant was made under the reasonable expectation of privacy, given Defendant's heightened statutory obligations of confidentiality.

Accordingly, Plaintiff has stated a claim for intrusion upon seclusion. The claim should proceed.

## VI. The First Amended Complaint is Not A Shotgun Pleading.

Defendant argues that the FAC is "an improper shotgun pleading because Plaintiff incorporates all allegations . . . in each count." MTD at 20. Not so.

Defendant position misreads *Weiland* as overly broad. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1324 (11th Cir. 2015) (holding that incorporating specifically numbered paragraphs in a complaint gave adequate notice of the facts underlying several legal claims). Here, Plaintiff incorporated paragraphs 1 through 118 for Counts I through V. *See* FAC at 37, 41, 44, 46, 48. Plaintiff incorporated these specific paragraphs because the facts within give rise to all the legal claims after. Plaintiff did not incorporate irrelevant factual allegations for any count. "The allegations of each count are not rolled into every successive count on down the line." *Weiland*, 792 F.3d at 1324; *see also* FAC at ¶¶ 41, 44, 46, 48.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion should be denied in full. Alternatively, if the Motion is granted in any respect, Plaintiff requests leave to amend. *Forman v. Davis*, 371 U.S. 178, 182 (1962).

Dated: July 7, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
Sarah N. Westcot

Sarah N. Westcot
Stephen A. Beck
701 Brickell Avenue, Suite 2100
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 679-9006
Email: swestcot@bursor.com
sbeck@bursor.com

*Counsel for Plaintiff*