UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

JOHN DOE, individually and on behalf of
all others similarly situated,

Plaintiff,

v. CASE NO. 9:26-cv-80051-EA

GREEN SENTRY HOLDINGS, LLC
d/b/a SUNBURN CANNABIS,

Defendant.
_______________________________/

**DEFENDANT GREEN SENTRY HOLDINGS, LLC'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Plaintiff's response to Green Sentry's Motion to Dismiss concedes his claim for civil theft,[1] and fails to muster the factual allegations or legal authority necessary to sustain his remaining causes of action. Instead, Plaintiff offers a grab bag of unsupported arguments and inapposite case law—none of which alters the outcome. Plaintiff still cannot demonstrate Article III standing, state adequate claims under the ECPA, FSCA, and FDUTPA, and cannot plead a viable intrusion upon seclusion claim. As set forth in the Motion to Dismiss [ECF No. 019] and detailed below, the Amended Complaint remains fatally deficient and should be dismissed with prejudice.

**I. Plaintiff's ECPA and FSCA Claims Fail Because Plaintiff Lacks Article III Standing and Has Not Stated a Claim.**

*A. Plaintiff lacks Article III standing to pursue ECPA and FSCA claims.*

Plaintiff's standing argument overstates the holding of *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). In *TransUnion,* the Court stated that "[c]entral to assessing concreteness [of a

---

[1] As Plaintiff dismissed the civil theft claim, that claim is not addressed herein.

harm] is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including . . . reputational harm." *Id.* at 417. Critically, the Court held that only those class members who demonstrated concrete reputational harm from TransUnion's failure to ensure the accuracy of their credit files had standing; others who sustained no actual reputational injury did not. *Id.* 418. Plaintiff leans heavily on a statement the *TransUnion* Court made *in dicta*, citing *Davis v. Federal Election Commission*, 554 U.S. 724 (2008), for the proposition that disclosure of private information "can" be concrete. *TransUnion*, 594 U.S. at 425. But *Davis* involved the disclosure requirements of a campaign finance statute, and the parties never disputed that Davis had standing. *Id.* at 733.

While Plaintiff maintains that the Court's analysis must focus solely on the statutory violation, that thinking "is no longer viable, however, because it runs directly counter to the Supreme Court's clarification that a 'legislature's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III.'" *Cook v. Gamestop, Inc.*, 689 F. Supp.3d 58, 64 (W.D. Pa. 2023) ("Even if a plaintiff alleges a statutory violation [of the ECPA] . . . Article III standing still 'requires a concrete injury[.]'") The weight of authority holds that, absent an actual downstream harm—such as identity theft, financial loss, harassment, or adverse medical consequences—the mere disclosure of sensitive information does not constitute a concrete injury.

For example, in *Manning v. Zumpano Patricios, P.A.*, No. 25-cv-23184-BLOOOM/Elfenbein, 2025 WL 3062563 (S.D. Fla. Nov. 3, 2025), this Court dismissed a class action complaint at the pleadings stage and found that the mere disclosure of PHI is insufficient to confer Article III standing. *Id.* at **3-8. Judge Bloom observed that although the plaintiffs may be

at an increased risk of identity theft or fraud, that risk is too speculative to constitute an injury where the plaintiff asserted nothing "other than conclusory allegations regarding the misuse of Private Information stolen in the Data Breach." *Id.* at *4. Judge Bloom also squarely rejected that invasion of privacy, in and of itself, qualifies as a concrete harm. *Id.* at *6. "The assumption that Plaintiff has 'a property interest in [his Private Information] is a legal conclusion, and an unsupported one at that.'" *Id.* at *7 (citation omitted). "Plaintiff's allegation that he 'suffered actual injury in the form of damages to and diminution in the value of [his] Private Information . . . as a result of the Data Breach,' is 'little more than an unadorned, the defendant-unlawfully-harmed-me accusation.'" *Id.* (citation omitted). "Courts have held that allegations of loss of privacy from a data incident, without more, are insufficient to establish an injury in fact," particularly where the plaintiff "pleads no facts showing how the loss of privacy has impacted or damaged him." *Id.* at *8 (citation omitted).

The *Manning* court is not alone. Courts throughout the country have reached the same conclusion. *See also Walker v. Coffey*, 956 F.3d 163, 167 (3d Cir. 2019) ("A violation of the [Stored Communications] Act," which is part of the ECPA, "is not enough to satisfy the requirement for Article III standing; a plaintiff must allege the SCA violations caused a 'sufficiently concrete and particularized' injury-in-fact in order to have standing to sue."); *Cook*, 689 F. Supp. at 64; *Everhart v. Colonial Pipeline Co.*, 2022 WL 3699967, at *2 (N.D. Ga. July 22, 2022) ("Plaintiffs allege that their injuries include 'damage to and diminution in the value of PII' . . . [C]ourts in this circuit have dismissed actions based upon similar conclusory allegations for failing to allege an injury in fact."). *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 681 (N.D. Cal. 2021) (finding that the plaintiff lacked Article III standing to assert a claim under the ECPA based on Apple's disclosure of private information because "the harm is overly speculative"); *In re 21st*

*Century Oncology Customer Data Sec. Breach Litig.*, 380 f. Supp. 3d 1243, 125 (M.D. Fla. 2019) ("The court rejects this theory of injury in fact because Plaintiffs have not alleged that their personal information has an independent monetary value that is now less than it was before . . ."). Plaintiff does not allege "actual access" and "misuse" of his personal health information, such as fraudulent bank account openings, which were present in *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2022 WL 796367, at **3-4 (S.D. Fla. Mar. 15, 2022), where the court found injury-in-fact. Plaintiff also does not allege a substantial risk of identity theft, which the plaintiff did in *In re Mednax Servs, Inc.,* 603 F. Supp.3d 1183, 1201-02 (S.D. Fla. 2022), where the court found Article III standing was present. Plaintiff's reliance on *Cobbs v. PetMed Express, Inc.*, 824 F. Supp. 3d 1257 (S.D. Fla. 2026) is unavailing, as this case is a non-binding outlier that stands in stark tension with the overwhelming authority to the contrary.

*B. Plaintiff fails to state a claim for violation of the ECPA and FSCA.*

1. Plaintiff does not allege that the Website intercepted an "electronic communication."

Plaintiff does not allege that Green Sentry intercepted "electronic communications" within the meaning of the ECPA and FSCA. What Plaintiff actually alleges is that Green Sentry disclosed "the name of the product" viewed, "its price, and the fact that it was added to the consumer's bag," as well as basic identifying information. [Am. Compl. ¶¶ 83, 87]. In *Goldstein v. Costco Wholesale Corp.*, 599 F. Supp.3d 1318 (S.D. Fla. 2021), this Court held that "[s]uch commands are equivalent to 'dialing, routing, addressing, or signaling information' that courts routinely deem non-contents." *Id.* at 1322. Plaintiff claims, without basis, that *Goldstein* is distinguishable because Plaintiff alleges that "Plaintiff's communications" were disclosed. [Am. Compl. ¶ 89]. But the mere incantation of a statutory buzzword does not transform rooting data into substantive content. Technical data, including mouse clicks, scroll movements, pages viewed, and navigation

commands, constitutes routing or signaling information and falls outside the ambit of the ECPA and FSCA. *Goldstein*, 599 F. Supp.3d at 1322.

Plaintiff also contends that *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CaA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) is distinguishable because it relies on session replay software. This is a distinction without a difference. At bottom, *Jacome* held that mouse clicks, keystrokes, search terms, and information input into the website, and content viewed by the plaintiff do not constitute content under the FSCA. That holding was independent of the court's separate ruling that the FSCA does not apply to session replay software. *Id.* at *1, 3-4.

Plaintiff's reliance on *W.W. v. Orlando Health, Inc.*, No. 6:24-cv-1068-JSS-RMN, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025) does not help Plaintiff. There, the court found that the defendant intercepted "electronic communications" under the ECPA and FSA because it captured not just website activity, but *substantive communications with providers*. *Id.* at *2. The same is true of *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022), where the defendant intercepted the contents of "patient portal login communications," as well as "information about doctors, medical conditions, and appointments associated with a patient's session." *Id.* at 785. No such substantive communications have been alleged to be at issue here.

Further, Plaintiff overstates *Cobbs v. PetMed Express, Inc.*, 824 F. Supp. 3d 1257 (S.D. Fla. 2026), as the court addressed whether the plaintiff alleged interception of an "electronic communication" under a California statute not at issue in this case. *Id.* at 1271. In any event, *Cobbs* is a non-binding outlier.

2. <u>The ECPA claim also fails under the party-exception rule.</u>

Plaintiff offers no meaningful rebuttal to Green Sentry's showing that the ECPA claim fails under the party exception. 18 U.S.C. § 2511(2)(d). "The weight of persuasive authority in . . . .

pixel tracking cases," including those concerning healthcare, dictates that the recipient of the communication cannot be held liable under the ECPA. *T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-CV-5416-TWT, 2024 WL 5284883, at *2 (N.D. Ga. Aug. 28, 2024) The tort-crime exemption only applies "if a party to the communication illegally intercepts the communication and then, in an **independent act**, uses it for the **purpose** of committing a crime or tort." *Id.* at *4. Plaintiff has alleged neither.

Plaintiff cannot escape the inescapable: the Complaint identifies no tort or crime independent of the alleged interception itself, much less that Green Sentry acted with the purpose of committing one. Indeed, the Complaint, alleges that Green Sentry "used electronic communications to increase its profit margins." [Am. Compl. ¶¶ 139, 4]. Although Plaintiff contends that Green Sentry intentionally violated HIPAA, he nowhere alleges in the Complaint that Green Sentry acted with such purpose—thus distinguishing this case from *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025) (noting that the plaintiffs "have alleged Defendants intercepted their communications for the purpose of violating" HIPAA). Plaintiff's naked allegation that Green Sentry's purpose was to commit a crime or tort is a conclusion of law which the Court need not accept as true in resolving a motion to dismiss. *Solis-Ramirez v. U.S. Dep't of Justice,* 758 F. 2d 1426, 1429 (11th Cir. 1985). Further, Plaintiff's attempt to inject a purposeful HIPAA violation theory through his Response is impermissible. *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss.").

Moreover, although Plaintiff has identified some courts that have found that an alleged HIPAA violation satisfies the tort-crime exception, many courts in the Eleventh Circuit had held

otherwise. *See Piedmont Healthcare*, 2024 WL 5284883, at *2; *see also Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095 (W.D. Wash. May 13, 2024).

3. There was no unauthorized interception.

Plaintiff contends that the Court may not consider the Privacy Policy because he "does not reference, quote, attach, adopt, or otherwise incorporate any Privacy Policy." (Response, p. 5). This Complaint itself belies this assertion. Plaintiff incorporates the entire Website in the very first paragraph: "This is a class action brought on behalf of all persons who purchased medical cannabis on www.sunburncannabis.com (the 'Website.')" (Am. Compl. ¶ 1). And in paragraph 11, Plaintiff alleges that he was not "put on notice of a terms of service **or privacy policy**." (*Id.* ¶ 11 (emphasis added)). In any event, a document need not be expressly referenced in a complaint to be considered on a motion to dismiss. In *Johnson v. City of Atl.*, 107 F. 4th 1292 (11th Cir. 2024), the Eleventh Circuit confirmed that an extraneous document may be considered if it is "central to the plaintiff's claims" and "its authenticity is not challenged." *Id.* at 1300. Plaintiff disputes neither the centrality nor authenticity of the Privacy Policy. The Court should consider it.

Plaintiff's argument that his use of the Website could not constitute consent under HIPAA misses the mark entirely because Plaintiff asserts no claims under HIPAA. The claims here arise under the ECPA and FSCA, which require an unauthorized interception—and the Privacy Policy precludes that precise finding. *See Lakes v Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2005) (dismissing an ECPA claim because a reasonable website user would understand from the privacy policy that he is consenting to the use of cookies). Plaintiff's further contention that his consent via the Privacy Policy is not a valid defense to "criminal conduct" is equally unavailing—this is a civil proceeding, not a criminal prosecution and Plaintiff had not alleged any criminal wrongdoing. (Response, p. 7). Indeed, Plaintiff voluntarily dropped his civil theft claim.

Plaintiff's assertion that the Privacy Policy is not binding fares no better. Under Florida law, browser wrap agreements[2] are enforceable "when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on notice." *Arencibia v. AGA Serv. Co.*, No. 21-11567, 2022 WL 1499693, at *3 (11th Cir. May 12, 2022) (affirming the dismissal of a case because, in part, the plaintiff was put on notice of the website's terms and conditions prior to making a purchase). Here, the Privacy Policy is hyperlinked on the very first page of the Website, www.sunburncannabis.com (Am. Compl. ¶ 1), in white text against a black background and underlines when a user hovers over it:



[3]

In *Martin v. Lens.com, Inc.*, No. 0:24-cv-60489-LIEBOWITZ, 2024 WL 4826048, (S.D. Fla. Nov. 19, 2024), this Court held that where "the font color and size used do not bury or obscure the text," "the buttons are visible and readable," along with "[t]he additional feature that" that the hyperlink's text changes in appearance (ie, underline in this case) when the cursor hovers over it "tends toward conspicuousness and away from obscurity." *Id.* at *6*; see also Adams v. Lashify, Inc.*, 689 F. Supp. 3d 1146, 1156-57 (M.D. Fla 2023) (finding a plaintiff bound by an arbitration

---

[2] A browser wrap agreement, such as the Privacy Policy, is when a website "provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process." *Metropcs Communications, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018).

[3] This image is from the Website, which is incorporated into the Amended Complaint.

agreement within the website's terms of service based on "the text's prominent placement."). Under the terms of the Privacy Policy, Plaintiff's continued use of the Website constitutes assent.

**II. Plaintiff's FDUTPA Claim Fails.**

Plaintiff fails to refute that he lacks Article III standing to pursue a FDUTPA claim. *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076 (11th Cir. 2019) is inapposite. There, the plaintiffs incurred an economic loss when they purchased adulterated supplements that could not lawfully be sold. *Id.* at 1084-85. Here, Plaintiff has not alleged that he suffered any economic injury, nor that there is any threat of future harm. *Green-Cooper v. Brinker Int'l Inc.*, 73 F. 4th 883, 889-90 (11th Cir. 2023) is likewise inapplicable, as the plaintiff there did not assert a claim under the FDUTPA. Plaintiff does not cite a single case supporting that he has Article III standing to assert a FDUTPA claim based on the alleged interception at issue.

The Response also fails to cure the independent deficiency that Plaintiff has not stated a FDUTPA claim on the merits. First, the Privacy Policy refutes Plaintiff's contention that Green Sentry engaged in a deceptive act or unfair practice—it disclosed Green Sentry's practices and advised Plaintiff not to enter information into the website it did not want shared. Second, Plaintiff does not allege that he sustained any actual damages. In the Response (yet nowhere in the Complaint), Plaintiff advances a novel, far-fetched theory that "[t]he value of the product [he] received is less than the value Defendant promised because the product caused unlawful disclosure of medical information." [Response, p. 17]. Not only is this not pleaded, it is wrong. The value of the product Plaintiff received is the same with or without an allegedly unauthorized disclosure—it is a tangible good. And in any event, under Florida law, "an invasion of privacy is not considered actual damages under FDUTPA." *Muy v. International Business Machines Corp.*, No. 4:19cv14-MW /CAS, 2019 WL 13199611, at *2 (N.D. Fla. July 12, 2019). Plaintiff tacitly concedes as much

by arguing that even without actual damages he may seek injunctive relief under the statute. Not so. A plaintiff cannot state a cause of action for damages under FDUTPA if he fails to plead that he sustained actual damages. *See Macias v. HBC of Florida, Inc.*, 694 So. 2d 88, 90 (Fla. 3d DCA 1997) (holding that plaintiff failed to state a cause of action under FDUTPA as she suffered no actual damages and affirming dismissal of complaint with prejudice).

**III. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion.**

Plaintiff points to no authority that salvages his intrusion upon seclusion claim. As detailed in Green Senty's Motion, courts in this Circuit have consistently held that tracking tools deployed on a website do not constitute an intrusion into a private place, but at most interfere with a private activity—and even that interference does not rise to the level of "highly offensive" conduct needed for an intrusion upon seclusion.. *See Cobbs*, 824 F. Supp. 3d at 1274-75 (dismissing a claim for intrusion upon seclusion based on website tools which tracked movements and finding that such conduct is "not highly offensive under any understanding of the common law tort."); *W.W*, 2025 WL 722892, at *9; *Doe v. Wellstar Health Sys., Inc.*, 799 F. Supp. 3d 1268, 1274 (N.D. Ga. 2025) (dismissing a claim for intrusion upon seclusion because where, as here, Plaintiffs voluntarily provided their information to Defendant, there is no intrusion upon seclusion."). There is no cognizable basis to permit this claim to proceed.

**IV. <u>CONCLUSION</u>**

For each of the reasons set forth in Defendant's Motion to Dismiss and those set forth in this Reply, Defendant respectfully request that Plaintiffs' Complaint be dismissed with prejudice.

Dated: July 28, 2026

MCDOWELL HETHERINGTON LLP
Attorneys for Defendant
2385 N.W. Executive Center Drive, Suite 400
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax

By: __s/Danielle S. Ploshnick
DANIELLE S. PLOSHNICK
Fla. Bar No. 118911
danielle.ploshnick@mhllp.com

MCDOWELL HETHERINGTON LLP
Attorneys for Defendant
*THOMAS F.A. HETHERINGTON
Texas Bar No. 24007359
tom.hetherington@mhllp.com
*ANDREW R. KASNER
Texas Bar No. 24078770
andrew.kasner@mhllp.com
1001 Fannin Street, Suite 2400
Houston, TX 77002
(713) 337-5580
(713) 337-8850 fax
*Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I certify that on July 28, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Sarah N. Westcot, Esq.
Stephen A. Beck, Esq.
Bursor & Fisher, P.A.
701 Brickell Ave., Suite 2100
Miami, FL 33131
swestcot@bursor.com
sbeck@bursor.com
*Attorneys for Plaintiff*

s/Danielle S. Ploshnick
Danielle S. Ploshnick